**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| W.S.R., a minor,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, Attorney General of the United States, *et al.*<br><br>Defendants. | ) | Civ. No. 18-cv-4265<br><br>Hon. Judge Edmond E. Chang |
| C.D.A., a minor,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON B. SESSIONS III, Attorney General of the United States, *et al.*<br><br>Defendants. | ) | Civ. No. 18-cv-4291, consolidated with Civ. No. 18-cv-4265<br><br>Hon. Judge Edmond E. Chang |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF A MOTION FOR A TEMPORARY RESTRAINING ORDER**

W.S.R, a minor, by and through his counsel Bridget Cambria, Jacquelyn Kline, and Karen Hoffmann of Aldea - The People's Justice Center, Amy Maldonado of the Law Office of Amy Maldonado, and Thomas P. Yardley of the Law Firm of Robbins, Salomon & Patt, Ltd. hereby files the instant memorandum in support of the Motion for a Temporary Restraining Order pursuant to FRCP 65 and in support thereof state as follows:

**PRELIMINARY STATEMENT**

Plaintiff W.S.R. files the instant Motion for a Temporary Restraining Order relating to the decision of the United States Government to remove Plaintiff W.S.R. from the custody of his father in violation of paragraph 24B of the Flores Settlement Agreement (hereafter the "FSA or the

Settlement"). Plaintiff W.S.R. seeks judicial review of the improper and unlawful decision of the United States Department of Homeland Security ("DHS") to place him in the custody of the United States Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR") at the Heartland International Children's Rescue Center in Chicago, Illinois and away and apart from his father, Mr. Celio Alves-Ribeiro ("Alves-Ribeiro"), who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Otero County Processing Center in Chaparral, New Mexico.[1] Immediately following their apprehension by U.S. Customs and Border Patrol ("CBP") after entering the United States, Alves-Ribeiro and his son declared their intention to together seek asylum in the United States. Plaintiff seeks a Temporary Restraining Order requiring the United States Government to preserve the status quo prior to the recent change in immigration policy.

## I.BACKGROUND FACTS

### 1. Change in United States Immigration Policy

On May 7, 2018, the Attorney General of the United States announced a "zero tolerance policy," under which all adults entering the United States illegally would be subject to criminal prosecution, and if accompanied by a minor child, the child would be separated from the parent. *Ms. L; et al, v. U.S. Immigration and Customs Enforcement*, 2018 WL 3129486 (June 26, 2018). Over the ensuing weeks, hundreds of migrant children were separated from their parents, sparking public outrage and international condemnation of the practice. *Id.* On June 20, 2018, the President of the United States signed an Executive Order ("EO") which purports to end this practice. *See* Executive

[1]Alves-Ribeiro was detained at the West Texas Detention Facility. Counsel has been informed by Alves-Ribeiro's brother early in the morning of June 28, 2018 that he has been moved back to the Otero County Processing Center, and has confirmed this through the ICE Locator. As such LaSalle Corrections West, LLC and the Warden, Mike Sheppard are no longer the physical custodians of the father and no longer necessary parties to this case. Counsel for Plaintiff will file a Motion to Terminate Parties imminently. Counsel for all necessary parties have filed appearances in this matter.

Order, Affording Congress an Opportunity to Address Family Separation § 1, 2018 WL 3046068 (June 20, 2018). *Id.*

The EO did not address reunification of the burgeoning population of over 2,000 children separated from their parents. *Id*. On June 26, 2016, the United States District Court for the Southern District of California issued an Order Granting Plaintiffs' Motion For Class Wide Injunction which requires that the United States Government reunite minor children who have been separated from their parents. *Ms. L; et al, v. U.S. Immigration and Customs Enforcement*, 2018 WL 3129486 (June 26, 2018). Plaintiff W.S.R. hereby files this Motion for a Temporary Restraining Order seeking specific relief that is different and separate from the relief provided for in the Injunction issued by the United States District Court for the Southern District of California.

**2. W.S.R. and his father, Mr. Celio Alves-Ribeiro**

Plaintiff W.S.R. is a 15-year old minor child and citizen of Brazil. He will turn 16 on July 6, 2018. (Alves-Ribeiro Affidavit, ¶ 2). W.S.R. is currently being held at an undisclosed facility operated by Defendant Heartland Human Care Services, Inc., under contract with HHS. W.S.R.'s father is Celio Alves-Ribeiro, 43 years old and a former resident of Ipatinga, Minas Gerais, Brazil. He has requested asylum in the United States. W.S.R. is a derivative on his claim (i.e., W.S.R.'s claim to remain in the United States depends on whether or not his father is granted asylum). Alves-Ribeiro has not, as of the afternoon of June 28, 2018, had a "credible fear interview" with regard to his asylum claim (the first step in the process). He was detained at the West Texas Detention Facility in Sierra Blanca, Texas until yesterday. (See ¶ 1 of the Affidavit of Celio Alves-Ribeiro attached hereto as Exhibit A). He is currently detained at the ICE Otero County Processing Center.

**3. Threats in Brazil**

Alves-Ribeiro lived with W.S.R. in Brazil for the past five months. (Alves-Ribeiro Affidavit, ¶ 5). His claim of asylum is based on both father and son being targeted by a known drug trafficker

in their neighborhood. (Alves-Ribeiro Affidavit, ¶¶ 6-9). Alves-Ribeiro attempted to relocate internally within Brazil, but did not feel safe and feared for his life and that of his son. He could not go to the police due to rampant police corruption (Alves-Ribeiro Affidavit, ¶¶ 10-12).

Alves-Ribeiro states that he cannot evade the persons who have threatened to harm him and his son anywhere in Brazil, that they would locate W.S.R. even if he is sent away to study elsewhere, and that if he and W.S.R. return to Brazil they will both die. (Alves-Ribeiro Affidavit, ¶¶ 13, 15). W.S.R. does not know all the details of the threats because his father does not want to create any more emotional distress for his son. (Alves-Ribeiro Affidavit, ¶ 16). Alves-Ribeiro is afraid for his son's life and brought him to the United States to seek asylum protect him from persecution in Brazil. *Id.*

**4. Conditions of Detention**

On May 23, 2018, Alves-Ribeiro and W.S.R. tried to present themselves at the U.S. border for the purpose of seeking asylum in the United States but they were told that the port of entry was "closed" and that they could not present themselves to be processed as candidates for asylum. (Alves-Ribeiro Affidavit, ¶ 19). After being denied the ability to enter the United States legally, the two sought asylum the only way they could: by crossing into the United States outside the Port of Entry.[2] They were stopped by CBP officers just over the U.S.-Mexico border. (Alves-Ribeiro Affidavit, ¶ 20). The father and son were detained at a facility near the border for two days without sleep in "horrible" conditions. (Alves-Ribeiro Affidavit, ¶ 21). While at the facility, they were both were required to lay on the floor and they were only given one blanket which Ribeiro gave to W.S.R. *Id.*

**5. Separation from Father**

On the night of May 25, 2018, a guard came and informed Alves-Ribeiro that he was being transferred to a jail and that W.S.R. would be separated from him for between two to five days. (Alves-

[2] Pursuant to 8 U.S. Code § 1158(a)(1), seeking asylum in the United States requires physical presence in the country.

Ribeiro Affidavit, ¶ 22). Upon learning that they were about to be separated, W.S.R., who is a sensitive child, wept. (Alves-Ribeiro Affidavit, ¶ 23). Alves-Ribeiro reassured him that "we will be together soon." *Id*. Thereafter, Alves-Ribeiro was transferred to the Otero County, New Mexico Detention Facility where he was jailed for twelve to thirteen days without knowing where W.S.R. was being held. (Alves-Ribeiro Affidavit, ¶ 24).

**6. Criminal Court**

On or about June 10, 2018, Alves-Ribeiro appeared in court on the charge of entering the United States Illegally and was told that if he pled guilty, he would be allowed to see his son. (Alves-Ribeiro Affidavit, ¶ 33). When appearing in Court, Alves-Ribeiro was not allowed to speak with an attorney but does remember that an attorney that appeared to represent him looked at him while they called his case. (Alves-Ribeiro Affidavit, ¶ 26). While in Court, Alves-Ribeiro did not have a chance to explain to the Court the circumstances of his case, in that he had been denied the right to present himself for asylum at a port of entry, and thus that he and his son were not allowed to cross the bridge and enter the United States legally. *Id*. The Judge sentenced Alves-Ribeiro to time served and following the hearing, he was told that he would stay an additional two days and be deported. (Alves-Ribeiro Affidavit, ¶ 25). At the time Alves-Ribeiro appeared in Court, he had not slept for several days and he was never allowed to address the Court. *Id.*

**7. Immigration Detention**

After appearing in Federal Criminal Court, Alves-Ribeiro was returned to the custody of ICE and at that time, he thought he would be reunited with his son, but was not. (Alves-Ribeiro Affidavit, ¶ 27). Thereafter on June 14, 2018, Alves-Ribeiro was transferred to the West Texas Detention Facility in Sierra Blanca Texas. A day later, he was finally allowed to speak with his son. (Alves-Ribeiro Affidavit, ¶ 28-29). Over the phone, it was clear that W.S.R. was very upset, and he told his father that he didn't think they would ever see each other again. (Alves-Ribeiro Affidavit, ¶ 30).

In Illinois, W.S.R. was allowed to speak to his mother at which time he told her that he wanted to be deported back to Brazil. *Id*. (Alves-Ribeiro Affidavit, ¶ 31). W.S.R. has only been allowed to speak with his father on two occasions. (Alves-Ribeiro Affidavit, ¶ 32). On June 28, 2018, subsequent to the nationwide injunction, Alves-Ribeiro stated to counsel Karen Hoffmann that the day prior, ICE attempted (speaking to him in Spanish) to get him to sign a voluntary removal in English.[3] He refused.

**8. Notice Required by the Flores Settlement**

On June 18, 2018, counsel for Plaintiff W.S.R. contacted the office of the U.S. Attorney in Chicago via telephone and thereafter provided facsimile notice of widespread and deliberate violations of the Flores Settlement Agreement (hereafter "FSA") violations as required under Paragraph 37 of the FSA. (Amended Complaint, ¶ 23; Exhibit A thereto). Thereafter, counsel for Plaintiff had a telephone call with Sarah B. Fabian, Senior Litigator with the DOJ's Office of Immigration Litigation who confirmed Plaintiff's compliance with the requirement. *Id.*

**9. Counsel for W.S.R. Conferred with Opposing Counsel**

On Monday, June 25, 2018, counsel for Plaintiff, Amy Maldonado, conferred with AUSA Joshua Press by telephone. During that telephone conversation, counsel asked AUSA Press for an assurance that W.S.R.'s father and C.D.A.'s father will not be removed without their respective children. AUSA Press stated that there is no such assurance. On June 28, 2018, AUSA Joshua Press conferred telephonically with all counsel of record for the Plaintiff, stated that the Defendants were already enjoined from removing the fathers, and the parties came to no agreement on other relief.

**10. Counsel for W.S.R. Takes his Written Statement**

On June 26, 2018, counsel for Plaintiff Amy Maldonado met with W.S.R. at Heartland Human Care Services, Inc. located at 4822 N. Broadway Ave., Chicago, Illinois 60640 for approximately one

[3] Alves-Ribeiro does not speak Spanish or English. Upon information and belief, ICE told him that if he did not sign the form accepting deportation, he would remain in detention for five months and be unable to see his son during that time.

hour at which time she invited him to write a letter to describe in his own words the events of the past several weeks. (See ¶¶ 2, 3 of the Affidavit of Amy Maldonado, attorney for W.S.R. attached hereto as Exhibit B; Written Statement of W.S.R. with certified translation attached hereto as Exhibit C).

## I. Standards for TRO and the Flores Settlement

### A. Standards for a Temporary Restraining Order

To obtain a temporary restraining order the plaintiff must first show that he will suffer immediate irreparable harm, has no adequate remedy at law, and his claims have a likelihood of success. *David Johnson v. the State of Illinois Court of Claims*, 2015 WL 13047930 (Chang, 2015); citing Fed. R. Civ. P. 65(b)(1)(A); *Girl Scouts of Manitou Council v. Girl Scouts of USA*, 549 F.3d 1079, 1086-87 (7th Cir. 2008) (preliminary injunction factors). If the plaintiff can meet those requirements, then the Court must next balance, on a sliding scale, the nature and degree of the plaintiff's injury, the likelihood of prevailing, the possible injury to the defendants if the TRO is granted, and the public interest. *Deckers Outdoor Corporation v. The Partnerships Identified in Schedule A*, 2013 WL 12314399 (Chang, 2013 citing *Girl Scouts of Manitou Council v. Girl Scouts of USA*, 549 F.3d 1079, 1086-87 (7th Cir. 2008).

#### 1. Irreparable Injury

Irreparable injury is defined as "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Machine Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (reversing grant of preliminary injunction). For irreparable harm, a plaintiff must show that an award of damages at the end of trial will be "seriously deficient as a remedy for the harm suffered." *Roland Machine Co. v. Dresser Indus., Inc.*, 749 F.2d 8 380, 386 (7th Cir. 1984) (reversing grant of preliminary injunction).

**2. No Adequate Remedy at Law**

An adequate remedy at law is one that is clear, complete, and as practical and efficient as the potential equitable remedy. *Kenn v. Carr*, 945 F. Supp. 1151, 1157 (N.D. Ill 1996). In saying that the Plaintiff must show that an award of damages at the end of trial will be inadequate, that does not mean wholly ineffectual; it means seriously deficient as a remedy for the harm suffered. *Roland Mach. Co. v. Dressler Industries, Inc*. 749 F.2d 380, 386 (7th Cir. 1984).

**3. Likelihood of Success on the Merits**

For likelihood of success on the merits, "It is enough that 'the plaintiff's chances are better than negligible.'" *Brunswick Corp. v. Jones, Jr.,* 784 F.2d 271, 275 (7th Cir. 1986) (affirming grant of preliminary injunction). The "threshold is low." *Roland Machine Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 387 (7th Cir. 1984) (reversing grant of preliminary injunction). This standard "does not require a finding that it is more likely than not that one side will prevail." *Oxford Capital Illinois, L.L.C. v. Sterling Payroll Fin., L.L.C.*, 2002 U.S. Dist. LEXIS 4372, at *12 n.2 (N.D. Ill. Mar. 15, 2002). It is possible that both the plaintiff and the defendant may have a "better than negligible" likelihood of success. *Id.* The federal court must determine how likely the success is, because this affects the balancing of the relative harms. *Roland Machine*, 749 F.2d at 387.

**4. Balancing of the Hardships**

When balancing the hardships, court will consider the irreparable harm the non-movant will suffer if an injunction is granted and weigh that against the irreparable damage the movant will suffer if it is not. *Meridian Mut. Ins. Co. v. Meridian Ins. Group*, 128 F.3d 1111, 1120 (7th Cir. 1997) (reversing denial of preliminary injunction). The balancing of the harms involves a "sliding scale" analysis – the greater the movant's likelihood of success on the merits, the less strong a showing the movant must make that the balancing of harms weighs in its favor. *Promatek Indus. v. Equitrac Corp*., 300 F.3d 808, 811 (7th Cir. 2002) (affirming grant of preliminary injunction); *Storck USA, L.P. v.*

*Farley Candy Co*., 14 F.3d 311, 314 (7th Cir. 1994) (affirming denial of preliminary injunction). In weighing the harm to the non-moving party, the court considers whether an injunction bond would compensate those harms. *Gateway Eastern Ry., Co. v. Terminal R.R. Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) (affirming grant of preliminary injunction).

**5. Impact on Public Interest**

If the public interest would be harmed by the injunctive relief sought, then this factor weighs in favor of denying the TRO; if the public interest would be positively affected, then this factor weighs in favor of granting the TRO. See, e.g., *FATSI USA v. FATSI Farrag & Stipsits GmbH*, 2002 U.S. Dist. LEXIS 22840, at *12 (N.D. Ill. Nov. 26, 2002) (public interest benefits from increased competition). The primary concern here is to ensure that issuing an injunction will not disserve or harm the public interest. *Gateway Eastern Ry., Co. v. Terminal R.R. Assoc. of St. Louis*, 35 F.3d 1134, 1139 n.3 (7th Cir. 1994) (affirming grant of preliminary injunction).

**6. Related Standards and Case Law**

An evidentiary hearing is not required for a TRO under FRCP 65(b), but one may be held. *See, e.g., Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1265 (7th Cir. 1989); *Dombrowski v. Dowling*, 459 F.2d 190, 191 (7th Cir. 1972); *First Def. Legal Aid v. City of Chicago*, 209 F. Supp. 2d 934, 934-35 (N.D. Ill. 2002), *rev'd on other grounds*, 319 F.3d 967 (7th Cir. 2003). A preliminary injunction hearing may be consolidated with the trial on the merits under FRCP 65(a)(2) provided the parties are given sufficient notice consistent with the requirements of due process. *Dupuy v. Samuels*, 423 F.3d 714, 722 n.2 (7th Cir. 2005). Consolidation is within the court's discretion. *Id*.

**B. Standards Set Forth in the Flores Settlement and other Decisions and Statutes**

**1. The Flores Settlement**

The Settlement arose out of a lawsuit filed by plaintiffs in the Central District of California in 1985, challenging the policies of the Immigration and Naturalization Service (INS) regarding the

release of detained minors. In 1997, the district court approved the current FSA, which defines a "minor" as "any person under the age of eighteen (18) years who is detained in the legal custody of the INS," FSA at ¶ 4, and the certified class as "[a]ll minors who are detained in the legal custody of the INS," *Id.* at ¶ 10. The Settlement favors family reunification, favors and requires the government to work toward the release of the minor, and states the order of preference for persons into whose custody detained minors are to be released, provided that detention is not required to secure their appearance before immigration authorities or to ensure the safety of themselves or others. *Id*. at ¶ 14. The Settlement also addresses the appropriate care of those minors who cannot be immediately released, and thus remain in federal custody. *Id*. at ¶ 12A, 19-24 The FSA provides that every child has the right to contest their placement decision by the Defendants in a District Court with Jurisdiction and Venue over the matter. *Id*. at ¶ 24B.

**2. Flores Settlement Protects Both Accompanied and Unaccompanied Minors**

In 2016, the Ninth Circuit held that the FSA applies to both accompanied and Unaccompanied Minors. *See Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016). In affirming the District Court's determination, the Ninth Circuit held that the plain language of the Agreement clearly encompasses accompanied minors and had the parties to the Agreement intended to exclude accompanied minors from the Agreement, they could have done so explicitly when they set forth the definition of minors who are excluded from the Agreement." *See id*. ¶ 4.

**3. Flores Settlement Remains Intact**

In a 2017 decision, the Ninth Circuit held that neither the Homeland Security Act nor the Trafficking Victims Reauthorization Act invalidates the Flores Settlement requirement of bond hearings for unaccompanied minors. *Flores v. Sessions*, 862 F.3d 863 (9th Cir. July 5, 2017). As Justice Scalia observed in *Reno v. Flores*: "the [INS] must assure itself that someone will care for those minors pending resolution of their deportation proceedings. *That is easily done when the*

*juvenile's parents have also been detained and can be released together*; it becomes complicated when the juvenile is arrested alone, i.e. unaccompanied by a parent, guardian, or other related adult." 507 U.S. 292, 295 (1993) (emphasis added).

In *Bunikyte, ex rel. Bunikiene v. Chertoff*, 2007 WL 1074070 (W.D. Tex. April 9, 2007), the district court, when examining the impact of Flores on accompanied minors, specifically noted that the "[P]laintiffs and Defendants agree that separating the minor Plaintiffs from their parents by releasing the children to adult relatives would be traumatizing and detrimental to them."

### 4. The Federal Regulations Set Standards for the Release of Juvenile Aliens Prior to Removal

DHS has set forth regulations for the handling and release of juvenile aliens which state that juveniles for whom bond has been posted, for whom parole has been authorized, or who have been ordered released on recognizance **shall be released** in order of preference to: (1) (i) A parent, (ii) a legal guardian, (iii) another adult relative that is not in detention; (2) if there is no one to accept the release of a juvenile, and the juvenile has identified a parent, legal guardian or adult relative that is in detention, **simultaneous release of the juvenile and the parent, legal guardian, or adult relative shall be evaluated on a discretionary case-by-case basis**; (3) if the parent or guardian is in detention or is outside the United States, to such person designated by the parent or legal guardian in a sworn affidavit; and (4) in unusual and compelling circumstances, a juvenile may be discretionarily released to an adult, other than those previously identified. (*See* 8 C.F.R. § 1236.3, emphasis added).

## II. ARGUMENT

Plaintiff W.S.R. seeks the entry of an immediate Temporary Restraining Order to review his placement in an ORR shelter by DHS and HHS. Today is his 36th day in detention. Plaintiff remains physically confined at a facility operated by Heartland Human Services, Inc. in Chicago, Illinois after having been separated from his father at the United States border and transported more than a thousand miles away. Plaintiff's father remains in the custody of ICE to this day.

**A. W.S.R. Has Suffered Irreparable Injury**

W.S.R.'s complaint and supporting affidavits demonstrate that he has been forcibly separated from his caring father by the Defendants who exhibit utter disregard for W.S.R.'s interests and well-being, treating he concept of family was irrelevant, physically, socially, emotionally, or legally. This cannot stand. At no point did W.S.R. indicate a desire to separate from his father, with whom he requested to enter the United States and undergo the legal process afforded to all asylum seekers. Defendants have denied W.S.R. this right as well as his right to family integrity.

W.S.R. has suffered, and continues to suffer, in the following substantial ways: emotional, psychological and physical distress due to family separation causing him trauma in violation of the FSA's requirement that Defendants treat children in proper manner; loss of family integrity through the physical forced separation from his parent in violation of the FSA and Due Process with no knowledge that reunification will ever happen; loss of parental support for legal decision making; loss of his ability to competently claim asylum without his father as the principal applicant, witness and affiant; loss of the ability to proceed together with his father as an accompanying minor in removal proceedings; loss of the physical and loving support of his father; loss of his ability to meaningfully communicate with both of his parents; and finally, he is under duress to accept removal as opposed to availing himself of his legal rights.

Defendants did so despite Courts recognizing that separation causes trauma. *See also Stanley v. Illinois*, 405 U.S. 645, 647 (1972) ("[P]etitioner suffers from the deprivation of h[er] child[], and the child[] suffer[s] from uncertainty and dislocation."); *J.B. v. Washington County*, 127 F.3d 919, 925 (10th Cir.1997) ("[F]orced separation of parent from child, even for a short time, represents a serious infringement upon both the parents' and child's rights."); *Nicolson v. Pappalardo*, 685 F. Supp. 2d 142, 145-46 (D. Me. 2010) ("[e]very additional day" of separation causes further harm).

In affirmatively violating the FSA and a child's rights to family and physical integrity, Defendants violated the affirmative rights to which W.S.R. is legally entitled to and additionally his constitutional rights. "[L]oss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mills v. Dist. of Columbia,* 571 F.3d 1304, 1312 (D.C. Cir. 2009) (citations omitted). As a result, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 11A WRIGHT & MILLER, FED. PRAC. &PROC. § 2948.1 (2d ed. 2004).

**B. No Remedy at Law Would Be Adequate to Compensate W.S.R. For Being Separated From his Father.**

There is no remedy that can compensate W.S.R. for being forced to give up the integrity of his family and for being separated from his father (with no assurance from the Defendants that the separation will not be permanent). No legal remedy can replace the love and care of a parent. Moreover, W.S.R. has lost the parental decision-maker to guide him through complex removal proceedings and the principal applicant and witness with regard to his claim. Children in removal proceedings have no right to an attorney provided by the government, and so W.S.R. risks being forced to navigate these proceedings against a government prosecutor without any guidance. *See C.J.L.G. v. Sessions*, 880 F.3d 1122, 1147 (9th Cir. 2018).

**C. Likelihood of Success on the Merits**

W.S.R. is likely to succeed on the merits of his claims because the Defendants have failed in their legal duties to W.S.R. as outlined in the FSA and have violated W.S.R.'s fundamental due process rights. The parent-child relationship is a "basic civil right[] of man" and "far more precious… than property rights." *See Stanley v. Illinois*, 405 U.S. 645, 651 (1972). "[T]he relationship between parent and child is constitutionally protected" by the Fifth Amendment. *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). Indeed, "[t]he liberty interest at issue in this case—the interest of parents in the care,

custody, and control of their children— is perhaps the oldest of the fundamental liberty interests recognized by" the Court. *Troxel v. Granville,* 530 U.S. 57, 65 (2000).

The Defendants will offer no compelling state interest in destroying family unity. Additionally, the depravity of the actions by the state are only compounded by the reality that when the Defendants created this policy, they did so with no plan in place, presumably because they had no intention, to reunite children like W.S.R. to his lawful parent.

**D. Balancing of the Hardships**

There is absolutely no harm or hardship that results to the federal Defendants in keeping families together. By contrast, much harm has been done through an ill-conceived and poorly planned blanket policy of prosecuting immigrants, including those turned away from applying for asylum at a point of entry, for misdemeanor unlawful entry as an excuse to separate children from their parents in an effort to prevent legitimate asylum-seeking families. Notably, the government has announced a stop to the policy, but has made no plans to reunite the Plaintiff with his father.

**E. Public Interest**

Family unity is always in the public interest. The outrage and horror that accompanied the decision to separate families at the southern border has been in full public view since its enactment on May 7, 2018. Every level of society has expressed its abhorrence with the decision to take legitimate asylum seeking children from their caring parents. In fact, the separation of these two families has even exacerbated diplomatic tensions with Brazil. In addition to the nationwide preliminary injunction issued by Judge Dana Sabraw, 17 states have now filed a complaint against the Federal Government challenging the family separation practice. *See State of Washington v. United States*, Case No. 18cv0939, United States District Court for the Western District of Washington.

## V. CONCLUSION

In order to prevent the immediate and continuing irreparable harm to the Plaintiff as outlined above, the Plaintiff requests that the Court enter a temporary order:

- Releasing both W.S.R. and his father Mr. Celio Alves-Ribeiro from custody pursuant to the Flores Settlement and 8 C.F.R. 1236.3(b)(2) to their Sponsor, Catholic Charities of Chicago;

- Immediately reuniting W.S.R. with his father Mr. Celio Alves-Ribeiro somewhere within the jurisdiction of the Northern District of Illinois;

- Prohibiting the U.S. Department of Homeland Security, Immigration and Customs Enforcement from removing W.S.R.'s father, Mr. Celio Alves-Ribeiro from the United States without W.S.R.;

- Requiring the Attorney General to consolidate the immigration cases of W.S.R. and his father in the Chicago Immigration Court, or, in the alternative, to take no further action until the ruling of this Court on the preliminary injunction; and

- In the event that W.S.R. and his father are not released from custody, requiring DHS and ICE to make W.S.R. and his father Mr. Celio Alves-Ribeiro available as witnesses at the preliminary injunction hearing to be scheduled before this Court in the Northern District of Illinois.

Respectfully Submitted,

Dated: June 29, 2018

By: /s/Thomas P. Yardley

Thomas P. Yardley (IL Bar No. 6208239)
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle, Ste. 3300
Chicago, IL 60601
Phone: (312) 456-0184
Fax: (312) 782-6690
E-mail: tpyardley@rsplaw.com

Dated: June 29, 2018

By: /s/Amy Maldonado

Amy Maldonado (IL Bar No. 6256961)
Law Office of Amy Maldonado
333 Albert Avenue, Ste. 610
East Lansing, MI 48823
Phone: (517) 803-2870
Fax: (888) 299-3780
E-mail: amy@amaldonadolaw.com

Dated: June 29, 2018

By: /s/Karen Hoffmann

Karen Hoffmann (PA Bar No. 323622)
ALDEA – The People's Justice Center
532 Walnut Street
Reading, PA 19601
Phone: (484) 926-2014
Fax: (484) 926-2032
E-mail: karen@aldeapjc.org

Dated: June 29, 2018

By: /s/Bridget Cambria

*Bridget Cambria (PA Bar No. 205271)
*Jacquelyn Kline (PA Bar No. 307339)
Cambria & Kline, P.C.
532 Walnut Street
Reading, PA 19601
Phone: (484) 926-2014
Fax: (484) 926-2032
E-mail: bridget.cambria@cambriaklinelaw.com
E-mail: jackie.kline@cambriaklinelaw.com

ATTORNEYS FOR THE PLAINTIFF

**Pro hac vice motions forthcoming*